UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| RAYMOND VENTRICE, et al., | Civil Action No.: 2:16-cv-00660 |
| Plaintiffs, | |
| v. | OPINION |
| LEXINGTON INSURANCE COMPANY, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on four motions: (1) Plaintiffs Raymond Ventrice and Kevin Ventrice's ("Plaintiffs") motion to confirm the arbitration award in this matter, (ECF No. 27); (2) Plaintiffs' motion to dismiss Defendant Lexington Insurance Company's ("Defendant") counterclaim and to strike Defendant's affirmative defense, (ECF No. 31); (3) Defendant's motion for judgment on the pleadings, (ECF No. 50); and (4) Defendant's motion to bifurcate trial and discovery. (ECF No. 78). The Court has given careful consideration to the submissions from each party. On July 16, 2018, the Court held oral argument. For the reasons that follow, Plaintiffs' motion to confirm the arbitration award is administratively terminated without prejudice; Plaintiffs' motion to dismiss Defendant's counterclaim and to strike Defendant's affirmative defense is denied; Defendant's motion for judgment on the pleadings is denied; and Defendant's motion to bifurcate trial and discovery is denied.

## II. BACKGROUND

In 2008, Plaintiffs brought a cause of action against Moore Stephens P.C. ("Moore Stephens"), a certified public accounting firm, alleging claims of malpractice "arising from tax and estate planning advice they received from Moore Stephens." (ECF No. 50-1 at 1, 4-5). Prior to the lawsuit, Moore Stephens purchased from Defendant "a LexAssure Professional Liability

Insurance Policy No. 1225115 (the "Policy") . . . for the policy period of June 1, 2007 to June 1, 2008[.]" (ECF No. 25 ¶ 14).

According to Defendant, Moore Stephens notified Defendant of the cause of action brought against it and sought "defense under the Policy." (ECF No. 50-1 at 5). Defendant avers that it "first acknowledged receipt of the claim in its May 27, 2008 letter to Moore Stephens" and that it "agreed to provide a defense for Moore Stephens . . . and to indemnify those claims by [Plaintiffs] that properly fell within the Policy coverage." (*Id.*). Moreover, Defendant claims that "[t]he May 27, 2008 Letter also described the [lawsuit], identified relevant Policy provisions, reserved rights, and disclaimed indemnification for claims arising out of legal services subject to [an exclusion in the Policy]." (*Id.*).

Thereafter, Defendant contends that it "paid for the entire defense of Moore Stephens . . . after the exhaustion of the Policy's Self Insured Retention" and that it "made its first payment for the defense of Moore Stephens, after the Self Insured Retention had been exhausted, on September 20, 2012." (*Id.* at 7). On November 12, 2012, Defendant alleges that it sent another letter to Moore Stephens, in which it "reiterated its coverage position" and "incorporated the May 27, 2008 Letter by reference." (*Id.*). According to Defendant, Moore Stephens, in a December 17, 2013 letter to Defendant, "acknowledged [Defendant]'s coverage position," "stated its disagreement with [Defendant]'s interpretation of the legal services exclusion," and "directed [Defendant] to continue providing a defense for all claims against Moore Stephens directly and [through] vicarious liability, and acknowledged its duty to cooperate and assist [Defendant] and defense counsel." (*Id.* at 8). On January 31, 2014, Defendant maintains that it sent another letter to Moore Stephens "reiterat[ating] its previously stated coverage position, and incorporat[ing] its prior letters by reference." (*Id.* at 9).

2

On April 30, 2014, the case brought by Plaintiffs against Moore Stephens went to trial. (*Id.*). That day, Plaintiffs and Moore Stephens settled certain of Plaintiffs' claims. (*Id.*). "Pursuant to the Settlement, [Plaintiffs] released [certain claims against Moore Stephens] for $805,000, which included (i) an assignment of Moore Stephens' rights under the Policy against [Defendant], and (ii) a payment of $25,000 from Moore Stephens to [Plaintiffs]." (*Id.* at 9-10). "Moore Stephens and [Plaintiffs] agreed to resolve the remaining accounting claims through arbitration at a later date," and Plaintiffs "agreed 'not to seek recovery of any further monies or compensation from Moore Stephens, but to seek recovery for such additional monies and compensation from [Defendant] . . . .'" (*Id.* at 10 (citations omitted)).

Soon after learning of the Settlement between Plaintiffs and Moore Stephens:

> [Defendant] commenced a [Judicial Arbitration and Mediation Services ("JAMS")] Arbitration against Moore Stephens, seeking declarations that: (1) [Defendant] is not obligated to indemnify Moore Stephens in connection with any claim that is based upon or arises out of any legal advice or services; (2) Moore Stephens breached the terms and conditions of the Policy by settling certain claims; and (3) Moore Stephens improperly assigned its interests under the Policy to [Plaintiffs].

(*Id.*). On January 22, 2016, before the JAMS Arbitration took place, Plaintiffs "filed the instant Action . . . . [which] allege[s] two claims: (i) breach of the implied warranty of good faith and fair dealing and (ii) bad faith arising from [Defendant]'s handling of [Plaintiffs'] insurance claim." (*Id.*). The instant matter was then stayed pending a decision from the JAMS Arbitration Panel. (*Id.* at 10-11). On January 31, 2017, the JAMS Arbitration Panel issued a final award, "conclud[ing] that the 'legal services' exclusion of the Policy [did] not apply to the settlement for which Moore Stephens [sought] indemnity, and therefore [did] not bar indemnity for that settlement." (*Id.* at 11). The JAMS Arbitration Panel declined to rule on the following issues: "(a) coverage defenses raised by [Defendant] relating to Moore Stephen[s'] failure to obtain consent to settlement of the underlying actions; the unreasonableness of the settlement, and the lack of

3

authority for Moore Stephens to assign the Policy; and (b) Moore Stephen[s'] bad faith and fiduciary claims." (*Id.*).

Thereafter, Plaintiffs filed a first amended complaint, and Defendant filed an answer, counterclaims, and affirmative defenses. (ECF Nos. 25; 26). One of Defendant's counterclaims seeks a "declaration that . . . [Defendant] is relieved from any further obligation under the Policy resulting from Moore Stephens'[] failure to seek or obtain [Defendant]'s consent to enter into the Settlement[.]" (ECF No. 50-1 at 11).[1] According to Defendant, such relief is warranted because: (1) "[t]he Policy prohibits Moore Stephens from settling a claim without [Defendant]'s consent;" and (2) "[t]he Policy also contains a cooperation clause . . . [which] state[s] that 'the Insured and [Defendant] shall cooperate in the defense or settlement of [any] Claim,' and 'the Insured shall take no action or agree to any settlement . . . without the prior written consent of [Defendant.]'" (*Id.* at 4 (citations omitted)).

## III. LEGAL STANDARD

### A. Motion to Confirm Arbitration Award

"It is rare . . . to disturb an arbitration award." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013). "Indeed, '[t]here is a strong presumption under the Federal Arbitration Act [(the "FAA")], 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards.'" *Benhenni v. Bayesian Efficient Strategic Trading, LLC*, No. 15-8511, 2016 WL 5660461, at *5

---

[1] One of Defendant's counterclaims also sought a declaration that Defendant "is relieved from any further obligation under the Policy resulting from Moore Stephens'[] assignment of its interest in the Policy to [Plaintiffs]." (ECF No. 50-1 at 11-12). During oral argument, Defendant agreed, with Plaintiffs' consent, to withdraw such counterclaim with prejudice. Accordingly, the Court will not address Defendant's counterclaim or Defendant's corresponding affirmative defense in this Opinion.

4

(D.N.J. Sept. 29, 2016) (alteration in original) (citations omitted), *aff'd*, 692 F. App'x 94 (3d Cir. 2017).

"So, 'mindful of the strong federal policy in favor of commercial arbitration, [the Third Circuit] begin[s] with the presumption that the award is enforceable.'" *Id.* (alterations in original) (citations omitted). "If a dispute-resolution mechanism indeed constitutes arbitration under the FAA, then a district court may vacate it only under exceedingly narrow circumstances." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003) (citing 9 U.S.C. § 10). "Specifically, under Section 10 of the FAA, a district court can vacate an award only under one of . . . four narrow grounds," *Benhenni*, 2016 WL 5660461, at *6, which include:

> (1) [W]here the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Thus, '[t]he party seeking to overturn an award bears a heavy burden' given the 'exceptional deference' conferred to arbitration decisions and the 'exceedingly narrow circumstances' provided under Section 10 of the FAA." *Benhenni*, 2016 WL 5660461, at *6 (alteration in original) (citations omitted).

### B. Motion to Dismiss and Motion to Strike

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor

of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . 'will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

"Under Rule 12(f) a party may move to 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' A court has considerable discretion in deciding a motion to strike." *Kongtcheu v. Secaucus Healthcare Ctr., LLC*, No. 13-1856, 2014 WL 2435999, at *3 (D.N.J. May 30, 2014) (citations omitted). "Motions to strike are disfavored and will be denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Id.* (citations omitted).

### C. Motion for Judgment on the Pleadings

"A motion for judgment on the pleadings 'will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to a judgment as a matter of law.'" *Robertson v. Enhanced Recovery Co., LLC*, No. 15-1970, 2017 WL 5951584, at *1 (D.N.J. Nov. 30, 2017) (citations omitted). "The Court must 'view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.'" *Id.* (citations omitted).

### D. Motion to Bifurcate Trial and Discovery

"Bifurcation is permitted by Federal Rule of Civil Procedure 42(b)." *Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Ins. Co.*, 319 F.R.D. 209, 211 (E.D. Pa. 2017). Federal Rule of Civil Procedure 42(b) states that: "[f]or convenience, to avoid prejudice, or to expedite

6

and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b).

"The decision to bifurcate, or separate, claims 'is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial [court] in each instance.'" *Eizen Fineburg*, 319 F.R.D. at 211 (alteration in original) (citations omitted). "A court's ruling on whether to bifurcate 'requires balancing . . . several considerations, including the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation.'" *Id.* (citations omitted). "The moving party bears the burden of proving that bifurcation is warranted." *Id.*

## IV. DISCUSSION

### A. Motion to Confirm Arbitration Award

As discussed above, on January 31, 2017, a JAMS Arbitration Panel issued a final award relating to this matter, "conclud[ing] that the 'legal services' exclusion of the Policy [did] not apply to the settlement for which Moore Stephens [sought] indemnity, and therefore [did] not bar indemnity for that settlement." (ECF No. 50-1 at 11). On February 21, 2017, Plaintiffs filed a motion requesting that this Court confirm such award, (ECF No. 27), on the basis that Defendant did not allege that any of the circumstances set forth in 9 U.S.C. § 10(a) (corruption, fraud, or undue means; evident partiality or corruption in the arbitrators; the arbitrators were guilty of misconduct or of any other misbehavior; or the arbitrators exceeded their powers) applied in this matter.

In opposition to Plaintiffs' motion, Defendant does not maintain that any of the circumstances set forth in 9 U.S.C. § 10(a) are present here. Rather, Defendant avers that the

7

JAMS Arbitration Award should not be confirmed at this time because resolution of Defendant's counterclaim will relieve Defendant of any further obligations under the Policy and render the Arbitration Award findings moot. (ECF No. 36 at 7-11).

"'Under the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16, a district court with jurisdiction over an arbitration award must confirm the award when asked to do so,' 'unless the award is vacated, modified, or corrected.'" *Stone v. Bear, Stearns & Co.*, 872 F. Supp. 2d 435, 457 (E.D. Pa. 2012), *aff'd*, 538 F. App'x 169 (3d Cir. 2013). Whether the Court will vacate, modify, or correct the award is dependent on whether Plaintiffs are entitled to coverage under the Policy, which is currently an issue pending before the Court. (*See* ECF No. 27-3 at 27 ("The Arbitration Panel . . . is not ruling on all of the issues necessary for a determination of coverage."); *see also infra* Section IV.D (concluding that the issue of whether Plaintiffs are entitled to coverage remains before the Court)). Accordingly, the Court will administratively terminate Plaintiffs' motion without prejudice pending the resolution of whether Plaintiffs are entitled to coverage under the Policy, upon which, if appropriate, Plaintiffs may refile their motion.

### B. Motion to Dismiss and Motion to Strike

Plaintiffs move to dismiss one of Defendant's counterclaims, which seeks relief from any further obligations under the Policy as a result of Moore Stephens' failure to obtain Defendant's consent before entering into the Settlement Agreement. (ECF No. 26 at 13-14).

Plaintiffs first argue that Defendant's counterclaim should be dismissed because "neither the . . . Policy nor applicable law substantiate [Defendant]'s claim that [Moore Stephens'] alleged violations of the Settlement . . . provisions of the . . . Policy void all of [Defendant]'s obligations under the Policy." (ECF No. 31-1 at 7). In other words, Plaintiffs contend that because the Policy

does not state that it terminates upon a breach by Moore Stephens, Defendant fails to state a claim upon which relief may be granted.

The Court disagrees. "A material breach of a contract relieves an aggrieved party of its obligations under the contract." *Vosough v. Kierce*, 97 A.3d 1150, 1165 (N.J. Super. Ct. App. Div. 2014). Whether a contract provides for termination or not, "[a] material breach of contract on the part of one party *entitles* the other party to terminate it. If the breach is material . . . the non-breaching party *may treat the contract as terminated* and refuse to render continued performance." *In re Nickels Midway Pier, LLC*, 372 B.R. 218, 223 (D.N.J. 2007) (emphasis in original) (citations omitted).

Here, although the Policy does not provide for termination upon Moore Stephens' breach, New Jersey law affords the election of such a remedy if Moore Stephens' breach was material.[2] "Whether an act or course of conduct amounts to a material breach is usually a question of fact to be submitted to the jury." *Luma Enters., L.L.C. v. Hunter Homes & Remodeling, L.L.C.*, No. A-6094-11T3, 2013 WL 3284130, at *4 (N.J. Super. Ct. App. Div. July 1, 2013). Accordingly, the Court finds that at this stage of the litigation, Defendant states a claim upon which relief may be granted.[3]

Plaintiffs also maintain that Defendant's counterclaim that the Policy is void because Moore Stephens entered into a Settlement with Plaintiffs in contravention of the Policy should be dismissed because Defendant "is Barred from Asserting its 'Wrongful Settlement' Counterclaim .

---

[2] Accordingly, Plaintiffs' contention that they "have found no case law which supports the proposition that a breach of a settlement provision . . . voids or vitiates all of an insurer's obligations under a liability insurance policy," (ECF No. 31-1 at 8), is without merit.

[3] The Court does not opine on whether Plaintiffs in fact breached the Policy, whether such alleged breach was material, or whether Plaintiffs have any valid defenses to such alleged breach – questions of fact which will be addressed at a later stage of this litigation.

. . Before [Defendant] Proves [Defendant] is not in Breach of any of its Obligations to [Moore Stephens.]" (ECF No. 31-1 at 12). In support of this contention, Plaintiffs rely on *Fireman's Fund Insurance Company v. Security Insurance Company of Hartford*, 367 A.2d 864 (N.J. 1976), for the proposition that "[a]s a matter of law, before such allegations may be asserted, [Defendant] has the threshold burden of proving that it was not in breach of any of its fiduciary obligations to [Moore Stephens] in the handling of the relevant insurance claim for coverage respecting" Moore Stephens' claims. (ECF No. 31-1 at 12).

Plaintiffs' argument misconstrues the fundamental holding of *Fireman's Fund*, which did not address pleading standards at the motion to dismiss stage. Rather, the decision in *Fireman's Fund* was rendered with respect to a matter in which judgment had already been entered. *See* 367 A.2d at 866. Accordingly, Plaintiffs' argument is without merit.

Even under Plaintiffs' construction of the applicable pleading standards at this stage of the matter, Defendant states a claim upon which relief may be granted. Plaintiffs contend that Defendant's counterclaim "fails to allege that [Defendant] fulfilled all of its obligations to [Moore Stephens] before it alleged that [Moore Stephens] breached the settlement provisions of the policy." (ECF No. 31-1 at 13). Defendant's counterclaim, however, states that: "Moore Stephens tendered [Plaintiffs'] Claim to [Defendant] for defense and indemnification under the Policy. Subject to a reservation of rights, [Defendant] provided a complete defense for Moore Stephens in [Plaintiffs'] Suit and agreed to indemnify those claims by [Plaintiffs] that properly fell within the Policy coverage." (ECF No. 26 at 10). Accordingly, Plaintiffs' averment similarly lacks merit.

The remainder of Plaintiffs' motion to dismiss argues that Defendant's reservation of rights under the Policy was untimely and invalid, and that Defendant wrongfully denied Moore Stephens coverage. (ECF No. 31-1 at 13-19). Such arguments "rely on factual material which, to be

10

considered, would require the Court to convert [Plaintiffs'] Motion to Dismiss into a Motion for Summary Judgment." *Smith v. Church St. Corp.*, No. 06-966, 2006 WL 1307714, at *2 (D.N.J. May 8, 2006). For example, Plaintiffs contend that Defendant's reservation of rights under the Policy was untimely, and that it was invalid because it was not subject to a non-waiver agreement. (ECF No. 31-1 at 15-18). In support of this contention, Plaintiffs cite to the November 12, 2012 letter sent from Defendant to Moore Stephens. (*Id.*). Again, "[t]o consider this argument, however, would require the Court to consider additional factual material and arguments that are more appropriate for a Motion for Summary Judgment than a Motion to Dismiss."[4] *Smith*, 2006 WL 1307714, at *2. Accordingly, the Court will deny Plaintiffs' motion to dismiss on this ground, but notes that, if appropriate, Plaintiffs may renew such argument in a motion for summary judgment after the completion of discovery. Based on the foregoing, Plaintiffs' motion to dismiss is denied.

As to Plaintiffs' motion to strike one of Defendant's affirmative defenses, Plaintiffs set forth the same arguments in support of striking Defendant's affirmative defense as they do in support of dismissing Defendant's counterclaim. The Court does not find that such arguments demonstrate that "Defendant's [affirmative defense is] irrelevant, cause[s] prejudice, or confuse[s]

---

[4] Plaintiffs appear to recognize that many of the arguments in their motion to dismiss rely on factual allegations that the Court may not consider at this procedural posture. (*See* ECF No. 31-1 at 14 n.4 ("It is expected that the precise timing of when [Defendant] actually took an active part in defending and/or in paying for [Moore Stephens'] defense of [its claims] will be found in the [Defendant] claims files and related materials."); *id.* at 18 ("[Defendant] cannot *prove* that a 51 month delay in the submission of its reservation of rights letter was not unreasonable. Neither can [Defendant] *demonstrate* that the [November 12, 2012] letter constituted a valid non-waiver agreement pursuant to" case law) (emphasis added); ECF No. 45 at 10 n.6 ("It is the position of [Plaintiffs] that should the Court deem that there is insufficient information in the pleadings to grant the Plaintiffs' Motion regarding [Defendant]'s settlement defense, that discovery will reveal information which further supports [Plaintiffs'] contention that [Defendant] acted in bad faith and breached its fiduciary obligations of good faith and fair dealing.")).

11

the issues in this case." *Kongtcheu*, 2014 WL 2435999, at *4. Thus, Plaintiffs' motion to strike is denied.

### C. Motion for Judgment on the Pleadings

Having denied Plaintiffs' motion to dismiss Defendant's counterclaim and to strike Defendant's affirmative defense, the Court must now turn to Defendant's motion for judgment on the pleadings. Defendant avers that it is entitled to judgment on the pleadings with respect to the following counterclaim: "[Defendant] Is Relieved From Any Further Obligations Under The Policy Resulting From Moore Stephens'[] Failure To Seek Or Obtain [Defendant]'s Consent To Enter Into The Settlement Agreement[.]" (ECF No. 26 at 13-14). Defendant contends that such relief is proper because "[t]he Policy expressly prohibits Moore Stephens from . . . settling claims without the participation or consent of [Defendant.]" (ECF No. 50-1 at 12).

Defendant maintains that Moore Stephens forfeited coverage when it breached the Policy by failing to obtain Defendant's consent to settle. (*Id.* at 13-17). In support of this contention, Defendant cites to *New Jersey Eye Center, P.A. v. Princeton Insurance Company*, 928 A.2d 25 (N.J. Super. Ct. App. Div. 2007), "for the very proposition that an insured is not permitted to settle claims without the participation and consent of the insurer where the insurer is providing a defense, even under a reservation of rights." (ECF No. 50-1 at 14). To demonstrate that Defendant's "defense was always provided under a reservation of rights," Defendant points to three separate letters in which Defendant contends that "Moore Stephens [was] continually made aware of [Defendant]'s position while [Defendant] continued to provide a defense," (*id.* at 15), and that Moore Stephens "acknowledged the same in its December 17, 2013 Letter to [Defendant]." (*Id.*).

In response, Plaintiffs maintain that a genuine issue of material fact exists as to whether Defendant timely and validly reserved its rights under the Policy. (ECF No. 79 at 16). In support

12

of such argument, Plaintiffs contend, through a sworn certification, that Defendant waited 51 months from the filing of Plaintiffs' first amended complaint against Moore Stephens to reserve its rights, (ECF No. 31-2 at 5), and that the letter in which Defendant reserved its rights did "not offer [Moore Stephens] the opportunity to accept or reject [Defendant]'s intention to defend the claim under a reservation of rights to disclaim coverage." (*Id.* at 6).

Based on the foregoing, the Court finds that a genuine issue of material fact exists as to whether Defendant timely and validly reserved its rights under the Policy. Accordingly, Defendant's motion for judgment on the pleadings will be denied. *See Robertson*, 2017 WL 5951584, at *1 ("A motion for judgment on the pleadings 'will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to a judgment as a matter of law.'") (citations omitted).

### D. Motion to Bifurcate Trial and Discovery

Finally, Defendant argues that bifurcation of trial and discovery is appropriate in this matter because "the issue of 'bad faith' cannot be addressed *until* there has been a finding that Moore Stephens is entitled to coverage under the Policy." (ECF No. 78-1 at 10-11). Moreover, Defendant avers that bifurcation is proper because it would promote "judicial economy and efficiency," (*id.* at 11), because "the issue of coverage is distinct and separate from that of bad faith," (*id.* at 12), and because Plaintiffs "will not be prejudiced if the issue of bad faith is bifurcated and proceeds only *after* the predicate coverage issued is resolved." (*Id.* at 12-13).

In response, Plaintiffs aver that the issue of coverage has already been decided by the JAMS Arbitration Panel, and that the only issues that remain for resolution by this Court involve post-breach-of-contract conduct that relates to Plaintiffs' claims of bad faith and breach of fiduciary duty. (ECF No. 82 at 8-14). In other words, Plaintiffs appear to contend that Defendant's motion

13

for bifurcation is moot, as the issue of coverage has already been decided and the only issue that remains before the Court is bad faith.

The Court disagrees with Plaintiffs. Although the JAMS Arbitration Panel determined "that the 'legal services' exclusion of the Policy [did] not apply to the settlement for which Moore Stephens [sought] indemnity, and therefore [did] not bar indemnity for that settlement," (ECF No. 50-1 at 11), the Panel "unanimously decline[d] to rule on the remaining issues raised by the parties," including "those *coverage* defenses raised by [Defendant] relating to the alleged failure of [Moore Stephens] to obtain consent to the settlement of the underlying matter, the alleged unreasonableness of the underlying settlement[,] and the alleged absence of any authority for [Moore Stephens] to assign the Policy[.]" (ECF No. 27-3 at 20-21 (emphasis added)). In fact, the JAMS Arbitration Panel explicitly stated that "it [was] not ruling on all of the issues necessary for a determination of *coverage*." (*Id.* at 27 (emphasis added)).

Based on the foregoing, the Court concludes that the issue of whether Plaintiffs are entitled to coverage under the Policy properly remains before the Court. Nonetheless, the Court has weighed the considerations relevant to Defendant's motion for bifurcation and finds that bifurcation is not appropriate in this case. "In determining whether bifurcation under Rule 42(b) is proper, 'courts should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, No. 14-4318, 2018 WL 627378, at *6 (D.N.J. Jan. 30, 2018) (citations omitted).

Here, such considerations are not advanced by bifurcation, as this case: (1) was filed over two-and-a-half years ago; (2) will not be disposed of on the pleadings, (*see supra* Sections IV.B-C); and (3) requires additional discovery to move on to the next stage of the litigation. "While

14

some cases may indeed be simplified and expedited by holding bad faith discovery in abeyance pending a determination of coverage, it has become exceedingly clear that this case is not one of them." *Nat'l Union Fire Ins. Co.*, 2018 WL 627378, at *6 (holding that bifurcation of coverage and bad faith claims was not appropriate where case was pending for over three years, the case would not be disposed of on the pleadings, and discovery remained). Accordingly, Defendant's motion to bifurcate trial and discovery is denied.[5]

## V. CONCLUSION

Based on the foregoing, Plaintiffs' motion to confirm the arbitration award is administratively terminated without prejudice; Plaintiffs' motion to dismiss Defendant's counterclaim and to strike Defendant's affirmative defense is denied; Defendant's motion for judgment on the pleadings is denied; and Defendant's motion to bifurcate trial and discovery is denied. An appropriate Order accompanies this Opinion.

DATED: October 1, 2018

CLAIRE C. CECCHI, U.S.D.J.

---

[5] Therefore, Defendant's request that a protective order be issued holding discovery on the bad faith claim in abeyance, (ECF No. 78-1 at 13-14), is denied as moot.